UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  21-20202-CR-MOORE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CALVIN TERRELL WRIGHT,

    Defendant.
_____/

## **REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS**

**THIS CAUSE** is before the Court on Defendant's Motion to Suppress Physical Evidence and Statements.  ECF No. 26.  This Motion has been referred to the undersigned by the Honorable K. Michael Moore, United States District Judge, for a Report and Recommendation.  ECF No. 21. Upon consideration of the Motion, Response by the government, and following an evidentiary hearing conducted on July 22, 2021, I Recommend that the Motion be **DENIED**.

### I.    BACKGROUND

Defendant is charged in this case by indictment with a single count of possessing a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. § 922(g).  The charges stem from an encounter with police while Defendant was in his car, stopped at a traffic light, and apparently asleep; after he was ordered out of the car, law enforcement spotted one firearm under the driver's seat, and a subsequent inventory search revealed a second gun within a backpack in the car.

### A.  Hearing Evidence

Miami-Dade Police Officer Joseph Lewis testified at the hearing that he responded to the

1

scene on January 14, 2021, in response to a report by a school safety officer that a man was slumped over the wheel in the intersection of Northwest 22nd Avenue and Northwest 127th Street in Miami-Dade, in front of a school. Officer Lewis arrived at the scene just after 5:00AM, before sunrise and in the rain. Upon arrival, he saw Defendant's vehicle stopped in the right lane of travel under a stop light, with an officer on either side of the vehicle. The engine was not running as Officer Lewis approached the passenger side of the vehicle. The other officer on that side of the vehicle knocked on the window, causing Defendant to begin to rouse. Officer Lewis opened the passenger door and demanded the keys; Officer Lewis testified that he took the keys to prevent the Defendant from hitting the gas and accelerating into the intersection.

Officer Lewis walked to the driver's side of the vehicle. The driver's side door had been opened by another officer on the scene. Officer Lewis asked Defendant if he had been drinking; Defendant denied that he had, answering that he had just stopped and did not want to drive. Defendant stated he was waiting on a tow truck. Officer Lewis testified that he perceived Defendant as agitated and confused; that Defendant was slurring his words; and that he was not making sense. At this point, Officer Lewis was standing in a lane of travel, and body camera video played at the hearing shows vehicles passing him on the left and honking horns around him. Officer Lewis felt it was unsafe to conduct this assessment where he was, with cars rushing by, and decided it was safer to move Defendant out of the road. He ordered Defendant out of the vehicle. In response, Defendant offered the Officer his license, then his registration. Officer Lewis repeated his order for Defendant to exit the vehicle.

As soon as Defendant stood out of the vehicle, the officer next to Lewis called out "55," the numerical code for identification of a firearm. Officer Lewis looked inside the vehicle and saw a gun protruding from under the driver's seat. Officer Lewis testified that he knew the firearm's presence there was unlawful because it was immediately accessible to an occupant, as opposed to

2

being locked up or concealed, as he testified was required by law. He accordingly placed the Defendant in handcuffs and told Defendant he was being detained. Officer Lewis asked Defendant if he was a convicted felon, learned that he was, and escorted Defendant back to his patrol car. Officer Lewis explained to Defendant that the car would likely be searched pursuant to standard procedures. While Officer Lewis had no doubt in his mind that Defendant would be criminally charged for possession of the firearm, he viewed his role as limited to detaining Defendant until arrival of a detective who would conduct the arrest. Indeed, officers on the scene contacted the Bureau of Alcohol, Tobacco and Firearms ("ATF") around 5:00AM, and Task Force Officer Louis Cerra ("Detective Cerra") responded.

Detective Cerra testified that upon his arrival at the scene, he observed a bag found in the vehicle that concealed a second firearm and a medicine bottle containing suspected narcotics. Defendant, who was still in the back of a patrol car, asked another officer to get the detective to talk to him. Defendant asked Detective Cerra not to let the vehicle be towed from the scene, explaining that his sister was in the hospital. In response, Detective Cerra asked the Defendant "what's up with what was under the seat" and "do you want to talk to me?"[1] Defendant shrugged and responded, "with all that's going on out here, I have to protect myself." At this point, the detective disengaged from Defendant, returning later with a form *Miranda* waiver.

Detective Cerra reviewed each line of the waiver with Defendant and asked if he understood each. Detective Cerra additionally orally informed Defendant that he did not have to speak with the detective. After reviewing the entire waiver form with Defendant,[2] Detective Cerra asked if Defendant was willing to speak with him. Defendant did not request a lawyer or discontinue the questioning. He admitted that the items seized—the two firearms and narcotics—

---

[1] Detective Cerra's testimony is quoted from the undersigned's notes, which may differ slightly from the official transcript, but are substantially close to the in-court testimony of the detective.
[2] The signed waiver form was admitted at the hearing as GX 2. ECF No. 30-2.

were his. When Detective Cerra read the *Miranda* form to Defendant, he had been in custody for nearly three and a half hours.

## II. DISCUSSION

Defendant moves to suppress the evidence seized following his detention on the grounds that the encounter with police exceeded the permissible scope of a legitimate investigative stop warranted under the circumstances. All seized evidence, including his statements, flow from the officers' order that he get out of the car, for which Defendant argues they had no legitimate basis, and thus all resulting evidence from his detention must be suppressed. Defendant additionally contends that because Detective Cerra questioned him in violation of *Miranda*, his post-*Miranda* statements must too be suppressed. In response, the Government contends that the traffic stop and Defendant's ensuing detention was supported by probable cause. The Government further disputes Defendant's argument that his post-*Miranda* statements were involuntarily made and thus inadmissible. No reply was filed.

### A. Reasonable Suspicion Supported Defendant's Initial Seizure

A person has the right to be free from unreasonable searches and seizures. U.S. Const. amend. IV. Traffic stops are seizures under the Fourth Amendment. *United States v. Ramirez*, 476 F.3d 1231, 1236 (11th Cir. 2007). A traffic stop is constitutional if it is either based upon probable cause to believe a traffic violation occurred or is justified by reasonable suspicion in accordance with *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). Reasonable suspicion requires a reasonable and articulable suspicion based upon objective facts that an individual is engaged, or about to engage, in criminal activity. *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000). It must be more than an "inchoate and unparticularized suspicion or hunch." *Id.* (quotation omitted). There must be a minimal level of objective justification taken from the totality of the circumstances. *Id.*

Though Defendant's vehicle was already stopped when law enforcement first encountered it, there is no meaningful dispute that the encounter constituted a seizure within the meaning of Fourth Amendment law.  On the continuum of intrusiveness attendant to a police encounter, Defendant contends that the order to exit his car converted this encounter not into a full arrest but an investigative stop, to which limited Fourth Amendment scrutiny is applied.  ECF No. 26 at 4-5.  Defendant argues under this level of scrutiny, the encounter "should have consisted of nothing more than verifying the reason for Defendant's presence in a traffic lane or assisting in moving the vehicle to the side of the road," contending that law enforcement lacked justification to order him out of his car.  *Id.* at 6.  At the hearing, defense counsel argued that the officer had reasonable suspicion only upon opening the car door, but not before.  I disagree.

At a minimum, as the government notes in its Response, Officer Lewis observed Defendant in violation of Florida law that prohibits stopping a vehicle in close proximity to an intersection or traffic control signal.  *See* Fla. Stat. § 316.1945.  Moreover, the objective facts known to law enforcement at the time supported the reasonable suspicion that Defendant was driving, or attempting to drive, under the influence. Crediting Officer Lewis's testimony at the hearing, before opening the car door, he was aware that the vehicle had been stationary under the light and not advancing with the changing of the signal long enough to have garnered the attention of the school safety officer.  As Officer Lewis approached, the vehicle was flanked by two officers watching Defendant, who appeared impaired and incapable of operating the vehicle.  That Officer Lewis suspected intoxication is further corroborated by the fact that his first question to the Defendant was if he had been drinking; that his suspicion was reasonable is supported by his description of Defendant's demeanor upon first encountering him.  Considering the totality of the circumstances, Officer Lewis was justified in the limited seizure, that is, opening the car to retrieve the keys and preventing Defendant from moving the car forward.

5

At that point, Officer Lewis conducted an investigative stop, which was limited in scope to the circumstances that justified the stop. *See United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). And the Supreme Court has upheld the practice about which Defendant complains here, holding that once a proper stop is made, a police officer "may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures." *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977). Immediately upon Defendant exiting the vehicle, officers spotted the firearm, for which Officer Lewis articulated probable cause to seize. *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009). Similarly, the inventory search of the vehicle attendant to the decision to detain Defendant was proper, and indeed, Defendant's Motion does not contend otherwise. While Defendant faults the officers for being too aggressive under these circumstances, their limited stop and investigation was fully supported by the objective facts giving rise to their seizure, and no Fourth Amendment violation here occurred.

**B. Statements**

Defendant contends, and the government does not dispute, that his statements to Detective Cerra before receiving the *Miranda* warnings are inadmissible. Defendant further contends, however, that the statements made post-*Miranda* are inadmissible because they were made under circumstances that would cause them to be involuntary.

The Fifth Amendment mandates that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. To guard against the risk of a coerced confession in violation of the Constitution's Self-Incrimination Clause, the Supreme Court has concluded that "the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Informing a suspect of those rights "generally produces a 'virtual ticket of admissibility.'" *United States v. Douglas*, 688 Fed. Appx. 658, 663 (11th Cir. 2017) (quoting *Missouri v. Seibert*, 542 U.S.

600, 608-09 (2004)).  Also, as a general rule, the existence of a pre-*Miranda* statement does not require suppression of a later post-*Miranda* statement that was knowingly and voluntarily made. *Id.*  The Supreme Court (by plurality) recognized an exception to this rule in *Seibert*, on which Defendant here relies: when police purposefully withhold *Miranda* warnings in order to obtain a full confession and provide him with full warnings to get him to re-confess, suppression of the post-*Miranda* statement is required, as the law forbids this calculated technique for undermining *Miranda*.  *Id.* (citing *United States v. Street*, 472 F.3d 1298, 1313-14 (11th Cir. 2006)).

The evidence here does not support the contention that Detective Cerra engaged in the type of "question-first and warn later" tactic necessitating suppression of his post-*Miranda* statements. Detective Cerra made contact with the Defendant at the point when *Defendant* requested an audience with him.  Defendant notes accurately that the detective responded to Defendant's attempt to discuss the fate of his car by questioning him about what was under the seat, and the undersigned has considered this fact, as well as the length and condition of Defendant's detention, in her analysis below regarding the voluntariness of Defendant's post-*Miranda* statements.  But the fact that Defendant solicited the contact and communication with the detective tends to undermine Defendant's argument that the detective engaged in an intentional interrogation technique intended to deprive Defendant of effective *Miranda* warnings.  Moreover, the pre-*Miranda* interaction was extremely brief, limited to a question or two to assess Defendant's willingness to speak to the detective.  The Eleventh Circuit has upheld under similar circumstances the trial court's determination that this does not constitute the "question first" strategy.  *Douglas*, 688 F. Appx. at 665.

Nor were the questions or Defendant's pre-*Miranda* statements particularly complete and detailed.[3]  *United States v. Gonzalez-Lauzan*, 437 F.3d 1128, 1138 (11th Cir. 2006) (applying *Seibert* factors and finding no error in trial court's finding that defendant's *Miranda* waiver was voluntary and constitutionally valid).  According to the detective, he asked Defendant "what's up with what was under the seat" and "do you want to talk to me?"  The question does not even identify the contraband at issue or crime under investigation.  Similarly, Defendant's response and reference to protecting himself may be incriminating but it is also vague. As compared to the statements elicited in *Seibert*, it cannot be similarly argued that it would have been unnatural for Defendant here to refuse at the second stage to refuse to repeat what he had said at the first.  Under the totality of the circumstances, the evidence does not support Defendant's characterization of the interrogation as comparable to the two-step questioning prohibited by *Seibert*.

Rather, the evidence supports a finding that Defendant knowingly and voluntarily waived his *Miranda* rights.  Before attempting to obtain a *Miranda* waiver from Defendant, Detective Cerra first determined that Defendant was lucid and capable of understanding his rights; recall that this encounter began with an apparently-impaired man slumped over the wheel of his car in an intersection.  Detective Cerra testified that he had Defendant read the rights aloud, to confirm his ability to read, and subsequently reviewed each right, which the Defendant acknowledged and initialed.  Defendant signed the form and provided a confession to possessing the contraband found in the car.

Though Defendant urges the Court to consider the duration of his detention—almost three and a half hours—as a factor that cuts against a finding of voluntariness, there was no evidence advanced to support the contention that his detention was prolonged or contributed to a coercive

---

[3] The government represents in its Response that it will not seek to admit these pre-*Miranda* statements and thus I recommend that the Motion be granted as to those statements.

atmosphere. Rather, Defendant's demeanor, captured on the video, was calm and relaxed as he interacted with the officers and others on the scene.[4] Ultimately, the undersigned has considered the evidence adduced and arguments advanced, and finds that Defendant voluntarily waived his *Miranda* rights and, accordingly, his post-*Miranda* statements are admissible.

### III.   CONCLUSION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress Evidence, ECF No. 26, be GRANTED to the extent he seeks to preclude admission of statements he made pre-*Miranda*. In all other respects, I recommend that Defendant's Motion be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to file objections by that date shall bar the parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** in Miami, Florida, this 20th day of October, 2021.

_____
LAUREN FLEISCHER LOUIS
UNITED STATES MAGISTRATE JUDGE

---

[4] Defendant communicated with someone he knew standing outside the patrol car, allegedly about the contraband found in the car and backpack.