UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:21-cr-20202-KMM

UNITED STATES OF AMERICA,

    Plaintiff,

v.

CALVIN TERRELL WRIGHT,

    Defendant.
_____/

## ORDER ON REPORT AND RECOMMENDATION

THIS CAUSE came before the Court upon Defendant Calvin Terrell Wright's ("Defendant" or "Wright") Motion to Suppress Physical Evidence and Statements. ("Mot.") (ECF No. 26). Therein, Defendant requests that the Court "suppress all physical evidence and statements which were obtained as a result of the unlawful search of his car and backpack as well as the statements which he purportedly made either in the absence of, or upon defective, *Miranda* warnings." Mot. at 1. The Government filed its Response to Defendant's Motion to Suppress. ("Resp.") (ECF No. 28). Defendant did not file a reply to the Government's Response. The matter was referred to the Honorable Lauren F. Louis, United States Magistrate Judge, who held an evidentiary hearing on Defendant's Motion on July 22, 2021. (ECF No. 30). On October 20, 2021, Magistrate Judge Louis issued a Report and Recommendation on Defendant's Motion to Suppress, ("R&R") (ECF No. 47), recommending that Defendant's Motion be GRANTED to the extent he seeks to preclude pre-*Miranda* statements he made to an officer, and DENIED in all other respects. Defendant filed timely objections to the R&R. ("Objs.") (ECF No. 50). The Government filed its Response to Defendant's Objections to Report and Recommendation on Motion to Suppress. ("Objs. Resp.") (ECF No. 52). The matter is now ripe for review. As set

forth below, the R&R is ADOPTED IN PART.

**I.     BACKGROUND**[1]

On January 25, 2021, the Government charged Defendant by criminal complaint with possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 3). On April 1, 2021, a federal grand jury sitting in the Southern District of Florida returned a one-count Indictment charging Defendant with the same offense, alleging that the firearms and ammunition were as follows:

(a)   One (1) Mossberg International 7115p semi-automatic firearm;
(b)   Three Hundred and Thirty-One (331) rounds of 0.22 caliber ammunition;
(c)   One (1) Kel-Tec 9mm semi-automatic handgun;
(d)   Twenty-three (23) rounds of 9mm ammunition.

(ECF No. 10). Trial in this matter is set to begin on November 2, 2021.[2] (ECF No. 49).

Defendant filed his Motion to Suppress Physical Evidence and Statements on June 24, 2021. (ECF No. 26). The Government filed its Response to Defendant's Motion to Suppress on July 8, 2021. (ECF No. 28). As noted above, Defendant did not file a reply to the Government's Response. The matter was referred to the Honorable Lauren F. Louis, United States Magistrate Judge, who held an evidentiary hearing on Defendant's Motion on July 22, 2021, which lasted for more than 4 hours. (ECF No. 30).

There, Magistrate Judge Louis heard the testimony of Miami-Dade Police Department ("MDPD") Officer Joseph Lewis ("Officer Lewis"). R&R at 1. The Court summarizes the testimony Officer Lewis as set forth by Magistrate Judge Louis in the R&R.

---

[1] Citations to the Transcript of the July 22, 2021 evidentiary hearing (ECF No. 53) are notated as "Evid. Hr. Tr. at ___."

[2] This matter was first scheduled for trial during the two-week trial period beginning July 6, 2021 at 9:00 AM. (ECF No. 20). Trial has been continued multiple times. (ECF Nos. 25, 35, 38, 49).

Officer Lewis testified that he (1) responded at 5:00 AM to a report that a man was slumped over the steering wheel of his vehicle in an intersection in front of a school, (2) saw a vehicle stopped under a stoplight in a travel lane that was not running when he arrived, (3) observed Defendant rouse when an officer on the passenger side of the vehicle knocked on the window, (4) opened the passenger door and demanded the keys from Defendant to prevent him from driving the car into the intersection, and (5) walked to the opened driver's side door and asked Defendant if he had been drinking, which Defendant denied.  R&R at 1–2.  In addition, Officer Lewis testified that Defendant told him he had stopped driving because did not want to drive and was waiting for a tow truck.  *Id.*  According to Officer Lewis, Defendant appeared agitated, confused, and was slurring his words, thus Officer Lewis ordered Defendant out of the vehicle as he felt it was unsafe to continue to assess Defendant while standing in a travel lane.  *Id.*

Officer Lewis further testified that he heard the officer next to him call out the code to identify a firearm when Defendant stepped out of his vehicle, and saw a gun protruding from under the driver's seat, which he knew was there unlawfully because it was immediately accessible.  *Id.* at 2–3.  Accordingly, Officer Lewis placed Defendant in handcuffs and told him he was being detained.  *Id.*  Officer Lewis then asked Defendant if he was a convicted felon, ascertained that he was, and placed him in the back of a patrol car.  *Id.* at 3.

Magistrate Judge Louis also heard the testimony of Task Force Officer Louis Cerra ("Detective Cerra").  Detective Cerra testified that (1) he saw a bag that was found in Defendant's vehicle that contained a second firearm and a medicine bottle containing suspected narcotics, (2) Defendant, from the back of a patrol car, asked another officer to get Detective Cerra to come to talk to him, (3) Defendant asked Detective Cerra not to let the vehicle be towed, (4) Detective Cerra responded, "what's up with what was under the seat" and "do you want to talk to me?",

(5) Defendant shrugged and responded, "with all that's going on out here, I have to protect myself," (6) Detective Cerra walked away from Defendant, (7) he returned later with a *Miranda* waiver form, reviewed the form with Defendant, and advised him of his *Miranda* rights, and (8) Defendant waived his *Miranda* rights and admitted that the seized items belonged to him. *Id.* at 3–4.

In his Motion, Defendant seeks to suppress (1) all physical evidence and statements, including both pre- and post-*Miranda* statements, obtained from him as the fruit of an illegal detention because he was ordered out of his vehicle without articulable suspicion of illegal activity, Mot. at 4–6, (2) a pre-*Miranda* statement he made to Detective Cerra, because he was in custody and was not advised of his rights when he made it, *id.* at 6–7, and (3) post-*Miranda* statements he made to Detective Cerra because they allegedly were the result of "question-first, warn later" interrogation techniques that rendered them involuntary under the circumstances. *Id.* at 7–10.

In response, the Government contends that officers had authority to order Defendant out of his vehicle because they found him seemingly unconscious and unresponsive at the wheel, parked in the middle of the road in front of a traffic signal and in a school zone at 5:00 AM, in violation of a state statute that prohibits parking a vehicle on the roadway or in an intersection. Resp. at 6–7. The Government argues that, accordingly, no Fourth Amendment violation occurred when Defendant was detained and that the firearm was observed in plain view. *Id.* at 10. In its Response, the Government states that it will not seek to admit Defendant's pre-*Miranda* statements to Detective Cerra. *Id.* at 13. However, the Government argues that Defendant's post-*Miranda* statements to Detective Cerra are admissible because post-*Miranda* statements are presumed voluntary even if they follow inadmissible pre-*Miranda* statements, and because Defendant's post-*Miranda* statements were not the result of "question-first" interrogation tactics intended to

circumvent Defendant's *Miranda* rights. *Id.* at 13–20.

As set forth in the R&R, Magistrate Judge Louis recommends that the Motion be GRANTED to the extent Defendant seeks to suppress evidence of his pre-*Miranda* statements to Detective Cerra and DENIED in all other respects. The Court agrees insofar as the R&R recommends Defendant's Motion be denied. However, as the Government has committed to not seeking admission of Defendant's pre-*Miranda* statement to Detective Cerra, Objs. at 1 n.1; Resp. at 13; Objs. Resp. 4–5, the Court need not determine whether that statement must be suppressed.

## II.   LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b)(3). The Court "must consider *de novo* any objection to the magistrate judge's recommendation." Fed. R. Crim. P. 59(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

However, a party's objections are improper if they expand upon and reframe arguments already made and considered by the magistrate judge, or simply disagree with the magistrate judge's conclusions. *See Melillo v. United States*, No. 17-CV-80489, 2018 WL 4258355, at *1 (S.D. Fla. Sept. 6, 2018); *see also Marlite, Inc. v. Eckenrod*, No. 10-23641-CIV, 2012 WL 3614212, at *2 (S.D. Fla. Aug. 21, 2012) ("It is improper for an objecting party to . . . submit [ ] papers to a district court which are nothing more than a rehashing of the same arguments and positions taken in the original papers submitted to the Magistrate Judge. Clearly, parties are not to be afforded a 'second bite at the apple' when they file objections to a R & R.") (quoting

*Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)).

When the objecting party has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

With respect to a magistrate judge's credibility findings, "a district court may not override essential, demeanor-intensive fact finding by a magistrate judge without hearing the evidence itself or citing an exceptional justification for discarding the magistrate judge's findings." *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1250 (11th Cir. 2007). "Rejecting credibility findings made by a magistrate judge without holding a new hearing is permissible only when there is an 'articulable basis for rejecting the magistrate's original resolution of credibility.'" *Id.* (citing *United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980)).

### III. DISCUSSION

In the R&R, Magistrate Judge Louis recommends that the Motion be GRANTED to the extent Defendant seeks to suppress evidence of his pre-*Miranda* statements to Detective Cerra and DENIED in all other respects.

#### A. Officers Had Authority to Conduct the Investigative Stop.

Magistrate Judge Louis first addresses Defendant's argument that all physical evidence and incriminating statements were obtained from Defendant in violation of the Fourth Amendment

because the officer's conducted an investigative stop that exceeded the permissible scope under the circumstances. R&R at 4. First, Magistrate Judge Louis found that the encounter between Defendant and the officers constituted a seizure. *Id.* at 5. Second, Magistrate Judge Louis found that Officer Lewis had reasonable suspicion to open Defendant's car door to remove the keys to prevent the car from moving forward. *Id.*

As a result, Magistrate Judge Louis found that (1) Officer Lewis conducted an investigative stop limited in scope to the circumstances that justified it, *id.* at 6 (citing *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001), (2) ordering Defendant out of his vehicle was proper, *id.* (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)), (3) Officer Lewis had probable cause to seize the firearm that was spotted in plain view, *id.* (citing *United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009)), and (4) the subsequent inventory search was proper. *Id.*

Accordingly, Magistrate Judge Louis found that Defendant's Fourth Amendment rights were not violated.

Now, in his Objections, Defendant objects to Magistrate Judge Louis's findings regarding the investigative stop and the officers and the search that followed. Objs. at 3.

First, Defendant argues he was detained. *Id.* at 3–4. Defendant notes that officers woke him up after he fell asleep behind the wheel of his vehicle. *Id.* at 3. However, Defendant argues that, even though he gave the officers his driver's license and told them he was waiting for AAA road service, they reached into the car through the passenger side door, removed the keys from the ignition to prevent him from driving the car, and escalated the encounter by ordering him out of his vehicle, which thus led to the officers observing the gun, Defendant's admission that he was a convicted felon, and the officers handcuffing him and placing him in the back seat of a patrol car. *Id.* at 4.

7

Second, Defendant argues that, by entering his vehicle to remove the keys, ordering Defendant out of his vehicle, and not accepting Defendant's explanation as to why his car was parked where it was, officers transformed the encounter from a brief, consensual stop to an investigative stop to which Fourth Amendment scrutiny applies. *Id.* Defendant argues that officers were not looking for Defendant and had no reason to believe he was engaged in criminal activity. *Id.* at 5.

Third, Defendant argues that the investigative stop conducted was not "reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* (quoting *United States v. Purcell*, 236 F.3d 1274, 1777 (11th Cir. 2001)). According to Defendant, the encounter should have been limited to no more than confirming why Defendant's car was parked where it was and assisting Defendant with moving the car to the side of the road. *Id.* In support, Defendant states that his car was stopped because of a mechanical problem, and officers did not have reasonable suspicion of other illegal activity because there were no allegations that Defendant was actually impaired, the car was stolen, or there was other "nefarious activity" afoot. *Id.*

In response, the Government first argues that Magistrate Judge Louis correctly found the officers had the authority to order Defendant out of his vehicle. The Government responds that, under the totality of the circumstances, the officers had reasonable suspicion that Defendant was potentially operating his vehicle while intoxicated, or at the very least had illegally parked his vehicle in close proximity to an intersection, in violation of state law. Objs. Resp. at 3. Accordingly, the Government argues that Magistrate Judge Louis correctly found the officers had authority to initiate the stop and order Defendant out of his vehicle, thereby leading to the plain view observation of the firearm under his seat and subsequent inventory search. *Id.* (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977)). In support of its argument, the Government

points to the fact that Defendant appeared agitated and confused, was slurring his words, stated that he did not want to drive, was asked if he had been drinking, and was found sleeping in a car parked in a travel lane in front of a traffic signal in a school zone. *Id.* at 4. In addition, the Government argues that the Court must credit Magistrate Judge Louis's assessment of this evidence and that the Court is bound by the R&R's finding that the totality of the circumstances support a finding of reasonable suspicion. *Id.*

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV. "A traffic stop is a seizure within the meaning of the Fourth Amendment." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citing *Delaware v. Prouse*, 440 U.S. 648, 653 (1979)). "Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest." *Id.* To initiate a traffic stop, officers must have either "probable cause to believe a traffic violation has occurred or justified reasonable suspicion." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). The authority to effect a brief, investigatory traffic stop must be based on an officer's reasonable suspicion that, under the totality of the circumstances and based on objective facts, an individual is engaging in criminal activity. *Id.* Once a brief, investigatory traffic stop is made, "an officer's actions during a traffic stop must be 'reasonably related in scope to the circumstances which justified the interference in the first place,'" and "[t]he traffic stop may not last "any longer than necessary to process the traffic violation," unless there is articulable suspicion of other illegal activity. *Purcell*, 236 F.3d at 1277 (citing *Terry v. Ohio*, 392 U.S. 1, 20 (1968)).

Defendant objects to the findings in the R&R "regarding the initial 'stop' of Defendant's car . . . and the search that follows," Objs. at 3, and the arguments he advances in his Objections challenge Magistrate Judge Louis's finding that the officers had reasonable suspicion to initiate an

investigative detention and that the scope of that investigative detention was limited to the circumstances. The Court agrees with the R&R's recommendation that Defendant's Motion to Suppress be denied on Fourth Amendment grounds. The Court finds on *de novo* review that the officers had reasonable suspicion to conduct the investigative traffic stop and that the stop was limited in scope to the circumstances that justified the interference in the first place.

First, Magistrate Judge Louis expressly credited Officer Lewis's testimony from the evidentiary hearing, R&R at 5, thus the Court must give her assessment of his testimony deference. Officer Lewis testified that Defendant's car was parked in an active travel lane under a traffic signal in a school zone. *Id.* at 2. As Magistrate Judge Louis correctly sets forth in the R&R, and as the Government argued in its Response and in its Response to Defendant's Objections to the R&R, this fact alone would have given officers reason to suspect that Defendant may have been violating a Florida traffic law that specifies where a person is prohibited from parking a car. *See* Fla. Stat. § 316.1945(1); *see also* R&R at 5; Objs. Resp. at 3; Resp. at 7.

Second, as is also set forth in the R&R, the facts known to officers leading up to the seizure also support a finding that they could reasonably suspect that Defendant was either operating his vehicle while impaired or intoxicated, or was attempting to operate his vehicle while impaired or intoxicated. The testimony of Officer Lewis, which Magistrate Judge Louis found credible, sets forth that it was 5:00 AM and Defendant's vehicle was turned off and parked in an active travel lane, under a traffic signal, near a school. R&R at 2. In addition, Officer Lewis testified that, before he opened the passenger door of Defendant's car, he was aware that Defendant was asleep, "slumped" over the steering wheel, and that the vehicle had been parked in that travel lane under the traffic signal for approximately an hour and a half, based on the report of a school safety officer. *Id.* at 5; Evid. Hr. Tr. at 75. While it, generally, is not illegal to sleep in a car, the fact that

Defendant's car was off and parked in an active travel lane at 5:00 AM for as long as it was, coupled with the fact that Defendant was observed slumped over the steering wheel, convinces the Court that the officers had reason to suspect impairment or intoxication. *See United States v. Broadie*, 452 F.3d 875, 879 (D.C. Cir. 2006) ("Our inquiry, however, 'does not deal with hard certainties, but with probabilities.'" (quoting *United States v. Moore*, 394 F.3d 925, 930 (D.C. Cir. 2005))).

Officer Lewis's reasonable suspicion that Defendant was impaired is corroborated by his actions after taking the keys to Defendant's car. The first question Officer Lewis asked Defendant was whether he had been drinking. Officer Lewis testified that Defendant was slurring his words, appeared agitated and confused, and informed Officer Lewis that he did not want to drive. R&R at 2. Officer Lewis testified that he then ordered Defendant out of his vehicle to investigate further. *Id.* These actions also indicate that the investigative stop was limited in scope to the circumstances which justified it in the first place—investigating whether Defendant was impaired or intoxicated. *See Purcell*, 236 F.3d at 1277. Although Defendant argues "[t]here was no allegation that Defendant was *actually* impaired, was driving a stolen vehicle or was in the midst of any form of nefarious activity," Objs. at 5 (emphasis added), an investigative detention requires that there be reasonable *suspicion*.

That Officer Lewis ordered Defendant out of his car did not expand the investigative detention beyond the scope of the circumstances that justified it. Having found that Officer Lewis had reasonable suspicion to effect a limited seizure of Defendant, Officer Lewis was well within his authority to order Defendant out of his vehicle—when making a traffic stop, an officer is permitted to order a driver out of the vehicle. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (noting that ordering a driver out of a car during an investigative traffic stop is a "de

11

minimis" intrusion into personal liberty).

Officer Lewis's testimony indicates that, at this point, he observed the firearm. R&R at 2. Because the seizure of this firearm was proper under the plain view doctrine, Defendant's argument that the stop exceeded the scope of the circumstances that justified the investigative detention in the first place fails. *Purcell*, 236 F.3d at 1277 ("The traffic stop may not last 'any longer than necessary to process the traffic violation' *unless there is articulable suspicion of other illegal activity*." (emphasis added) (quoting *United States v. Holloman*, 113 F.3d 192, 196 (11th Cir. 1997))). "The 'plain view' doctrine permits a warrantless seizure where (1) an officer is lawfully located in the place from which the seized object could be plainly viewed and must have a lawful right of access to the object itself; and (2) the incriminating character of the item is immediately apparent." *United States v. Smith*, 459 F.3d 1276, 1290 (11th Cir. 2006). Here, Officer Lewis was lawfully on the street standing next to the open door of Defendant's car and from this vantage point Officer Lewis observed the firearm protruding from under the driver's seat. R&R at 2–3. Further, as set forth in the R&R, Officer Lewis credibly articulated that he had probable cause to seize the firearm: he testified that he knew the firearm was not lawfully located under the driver's seat in Defendant's car because it was readily accessible to Defendant as an occupant of the vehicle, as opposed to being securely encased. *Id.*; Evid. Hr. Tr. at 25. Thus, for the foregoing reasons, Officer Lewis was permitted to seize the firearm given probable cause of other illegal activity. *See United States v. Spoerke*, 568 F.3d 1236, 1249 (11th Cir. 2009) ("Because [the officer] observed the contraband in plain view, he was entitled to seize it.").

In sum, on *de novo* review, the Court agrees with the recommendation of the R&R that Defendant's Motion be denied as to his Fourth Amendment arguments. Accordingly, the Court overrules Defendant's objections to Magistrate Judge Louis's Fourth Amendment findings in the

R&R.

### B. The Detective Did Not Engage in Improper "Question-First" Interrogation Tactics.

Magistrate Judge Louis next addresses Defendant's arguments that his pre- and post-*Miranda* statements to Detective Cerra must be suppressed. Because the Government does not seek to admit Defendant's pre-*Miranda* statements to Detective Cerra, Magistrate Judge Louis recommends that Defendant's Motion be granted as to those statements. R&R at 9. As to the post-*Miranda* statements Defendant made to Detective Cerra, Magistrate Judge Louis recommends that Defendant's Motion be denied. *Id.*

First, Magistrate Judge Louis found that, based on the evidence, Detective Cerra did not engage in "question-first, warn later" interrogation tactics. *Id.* at 7. Second, Magistrate Judge Louis noted that the evidence supports a finding that Defendant knowingly and voluntarily waived his Miranda rights. *Id.*

Accordingly, Magistrate Judge Louis found that Defendant's post-*Miranda* statements to Detective Cerra are admissible.

Now, in his Objections, Defendant objects to the findings of the R&R regarding the admissibility of his post-*Miranda* statement, which he claims was tainted by the way in which his pre-*Miranda* statement to Detective Cerra was obtained. Objs. at 3.

According to Defendant, rather than responding to Defendant's question about whether the car would be towed, Detective Cerra used the opportunity to question Defendant without providing a *Miranda* warning, and thus he engaged in deliberate "question-first" interrogation tactics. *Id.* 7–8. Defendant argues this led to an initial pre-*Miranda* incriminating statement followed a short time later by *Miranda* warnings and then post-*Miranda* incriminating statements, after Defendant had been detained in the backseat of a patrol car for three and a half hours. *Id.* at 7, 10. Defendant

13

also argues his three-and-a-half-hour detention in the backseat of a patrol car compromised the voluntariness of his post-*Miranda* statements. *Id.* at 7. Defendant contrasts his case with that of *United States v. Street*, 472 F.3d 1298 (11th Cir. 2006), and argues that Detective Cerra should have but did not employ curative measures to ensure Defendant knew the interaction was "starting fresh" when Detective Cerra returned with the *Miranda* form. *Id.*

In response, the Government argues that Defendant's challenge to the admissibility of his post-*Miranda* statements lacks merit because Defendant knowingly and voluntarily waived his Fifth Amendment rights. Objs. Resp. at 5. In support, the Government argues that cases cited by Defendant, including *Missouri v. Seibert*, 542 U.S. 600 (2004), affirm that knowing and voluntary post-*Miranda* statements are presumed admissible. *Id.* According to the Government, Magistrate Judge Louis expressly found that the evidence does not support a finding that Detective Cerra engaged in "question first, warn later" interrogation tactics that purposely circumvented Defendant's *Miranda* rights. *Id.* at 6 (citing R&R at 7). In addition, the Government points to Magistrate Judge Louis's observations that (1) Defendant's solicitation of the exchange between him and Detective Cerra undermines Defendant's argument that intentional interrogation tactics were used to circumvent his *Miranda* rights, *id.* (citing R&R at 7); (2) the interaction was extremely brief and limited to a question or two, *id.* (citing R&R at 7); and (3) the pre-*Miranda* statements were truncated and general. *Id.* (citing R&R at 8). The Government also notes that Magistrate Judge Louis credited Detective Cerra's testimony in support of her finding that Defendant's waiver of his rights was knowing and voluntary. *Id.* at 6–7.

In addition, the Government argues that Defendant's motion to suppress is moot as to his pre-*Miranda* statements to Detective Cerra because the Government has committed to not introducing those statements in its case-in-chief. *Id.* at 4–5.

14

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. "[T]o permit a full opportunity to exercise the privilege against self-incrimination, the accused must be adequately and effectively apprised of his rights and the exercise of those rights must be fully honored." *Miranda v. Arizona*, 384 U.S. 436, 467 (1966). Accordingly, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination," *id.* at 444, commonly known as the *Miranda* warnings. The Supreme Court further explained that "[c]onversely, giving the warnings and getting a waiver has generally produced a virtual ticket of admissibility." *Missouri v. Seibert*, 542 U.S. 600, 608–09 (2004). That waiver must be knowing and voluntary. *Miranda*, 384 U.S. at 444. Where there are both pre-warning and post-warning statements, "the general rule [is] that the existence of a pre-warning statement does not require suppression of a post-warning statement that was knowingly and voluntarily made." *United States v. Street*, 472 F.3d 1298, 1312 (11th Cir. 2006). However, an exception exists for when police "employ a deliberate 'question first' strategy intended to circumvent a defendant's *Miranda* rights." *Id.* (citing *Seibert*, 542 U.S. at 617).

Defendant "objects to the findings of the R & R regarding . . . the admissibility of his post-*Miranda* statement, which was tainted by the manner in which the initial statement was elicited from him." Objs. at 3. The arguments he advances in his Objections challenge Magistrate Judge Louis's finding that the evidence does not support that Detective Cerra engaged in "question-first" interrogation tactics intended to circumvent his *Miranda* rights. The Court agrees with the recommendation of the R&R that Defendant's Motion to Suppress be denied as to the post-*Miranda* statements he made to Detective Cerra.

First, the evidence does not support that Detective Cerra engaged in a deliberate "question-first" strategy intended to circumvent Defendant's *Miranda* rights.  The Court must "defer to a magistrate's findings unless the magistrate's understanding of facts is entirely unreasonable." *Ballard v. Comm'r*, 429 F.3d 1026, 1031 (11th Cir. 2005).  Here, Magistrate Judge Louis found that (1) when Detective Cerra questioned Defendant, he was responding to Defendant's request to speak to him, and (2) Detective Cerra responded to Defendant's question about his car by asking him "what's up with what was under the seat" and "do you want to talk to me?"  R&R at 7–8. The Court agrees with the reasoning in the R&R that the fact that Defendant solicited the interaction with Detective Cerra undermines Defendant's argument that Detective Cerra was engaged in intentional tactics to circumvent Defendant's *Miranda* rights.  In addition, the Court notes that Detective Cerra's testimony tends to show he was caught off guard when Defendant responded to Detective Cerra's pre-warning questions as he did, which convinces the Court that Detective Cerra was asking whether Defendant wanted to talk rather than attempting to circumvent Defendant's *Miranda* rights.  Evid. Hr. Tr. at 96–97, 101, 126.  Tellingly, as part of Detective Cerra's extremely brief pre-warning interaction with Defendant, he asked Defendant "Do you want to talk to me?"  R&R at 8.

Further, the pre-warning interaction between Defendant and Detective Cerra was extremely brief, R&R at 8, and Detective Cerra cut off the interaction when Defendant made the pre-warning statement.  Evid. Hr. Tr. at 96–97, 101, 126.  And, as Magistrate Judge Louis set forth in the R&R, neither Detective Cerra's questions nor Defendant's pre-*Miranda* statements were complete or detailed:  Detective Cerra's question does not identify the contraband and Defendant's pre-*Miranda* statement was vague.  R&R at 8.  In fact, the defense referred to Detective Cerra's question as "the general question" on cross examination: "You asked him the general question,

'Do you want to talk about what's inside the car?' Is that right?" Evid. Hr. Tr. at 124.

While Detective Cerra disengaged from Defendant and returned with a *Miranda* waiver form shortly after Defendant made his pre-*Miranda* incriminating statement, this case is far from *Missouri v. Seibert*. That case sets forth the exception to the general rule that a pre-warning statement does not require the suppression of a post-warning statement when police "employ a deliberate 'question first' strategy intended to circumvent a defendant's *Miranda* rights." *Street*, 472 F.3d at 1312 (citing *Seibert*, 542 U.S. at 617). In *Seibert*, the arresting officer was specifically instructed not to give the defendant *Miranda* warnings when he arrested her. *Seibert*, 542 U.S. at 604. The defendant was then taken to the police station where she was left alone in an interview room for 15 to 20 minutes before she was questioned without *Miranda* warnings for 30 to 40 minutes. *Id.* at 604–05. After a 20-minute break, the officer returned, the defendant waived her *Miranda* rights, and the officer recorded her confession after confronting her with her pre-warning statements. *Id.* And, the officer testified that "he made a 'conscious decision' to withhold *Miranda* warnings" so he could engage in question-first interrogation. *Id.* at 605–06. In contrast, here, as discussed above, the pre-warning interaction was extremely brief, Defendant sought out the pre-warning interaction, the questioning was relatively general, and Detective Cerra seemed caught off guard by the vague response.

Thus, the evidence does not support finding that Detective Cerra was engaged in "question-first" interrogation techniques. Rather, as Magistrate Judge Louis found in the R&R, the evidence supports a finding that Defendant knowingly and voluntarily waived his *Miranda* rights. The Court defers to Magistrate Judge Louis findings that: Detective Cerra confirmed Defendant was lucid and capable of understanding his rights, read Defendant his rights out loud, confirmed Defendant's ability to read, and reviewed each right, which Defendant acknowledged and initialed

17

before signing the form. R&R at 8; *see Amlong & Amlong, P.A.*, 500 F.3d at 1250; *see also Street*, 472 F.3d at 1312 ("[T]he general rule [is] that the existence of a pre-warning statement does not require suppression of a post-warning statement that was knowingly and voluntarily made.").

Last, as Defendant notes in his Objections, Objs. at 1 n.1, the Government represented that it would not seek to admit Defendant's pre-*Miranda* statements to Detective Cerra in its case-in-chief at trial "out of an abundance of caution." Resp. at 13. Now, the Government contends that Defendant's pre-*Miranda* statements to Detective Cerra are no longer an issue and Defendant's Motion as to those statements is moot. Objs. Resp. at 5. The Court agrees. Accordingly, the Court declines to adopt the R&R to the extent it recommends that the Court grant Defendant's motion to suppress his pre-*Miranda* statements to Detective Cerra.

## IV.   CONCLUSION

Accordingly, UPON CONSIDERATION of the Motion, the Response, the R&R, the Objections, the Response to the Objections, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that Magistrate Judge Louis's R&R (ECF No. 47) is ADOPTED IN PART and Defendant Calvin Terrell Wright's Objections (ECF No. 50) to Magistrate Judge Louis's Report and Recommendation are OVERRULED. Defendant's Motion (ECF No. 26) is DENIED AS MOOT to the extent Defendant requests that pre-*Miranda* statements he made to Detective Cerra be suppressed. In all other respects Defendant's Motion (ECF No. 26) is DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this *28th* day of October, 2021.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

    c:  All counsel of record